UNITED STATES DISTRICT COURT

FOR THE

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **HAROLD L. VARNADO** § | **CIVIL ACTION NO:** |
| § | |
| *Plaintiff* § | |
| § | |
| **v.** § | |
| § | |
| **GENERAL MOTORS LLC AND** § | |
| **MORGAN BUICK GMC** § | |
| **SHREVEPORT, INC.** § | |
| § | |
| *Defendants* § | **JURY TRIAL REQUESTED** |

## COMPLAINT

### I.  Parties

1. Plaintiff, **HAROLD L. VARNADO**, now and has been at all times material hereto resident of the State of Louisiana.

2. Defendant, **GENERAL MOTORS LLC**, hereinafter "GENERAL MOTORS", is a Delaware limited liability company with its principal place of business in Michigan. No publicly held entity owns 10% or more of the stock of GENERAL MOTORS.

GENERAL MOTORS is a Delaware limited liability company with its principal place of business in Michigan. General Motors LLC is owned by General Motors Holdings LLC. General Motors Holdings LLC is a Delaware limited liability company with its principal place of business in Michigan. General Motors Holdings LLC is owned by General Motors Company.

GENERAL MOTORS is authorized to do and doing business in the State of Louisiana whose agent for service of process is CT Corporation System, 3867 Plaza Tower Drive,

Baton Rouge LA 70816.

3. Defendant, **MORGAN BUICK GMC SHREVEPORT, INC.**, hereinafter "MORGAN BUICK", is a domestic corporation authorized to do and doing business in the State of Louisiana whose agent for service of process is Keith Marcotte, 8757 Business Park Drive, Shreveport, LA 71105.

## II. Jurisdiction

4. This Court has federal question jurisdiction over the lawsuit under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d); and 28 USC § 1331 in that this dispute involves predominant issues of federal law. Declaratory relief is available pursuant to 28 USC §§ 2201 and 2202. The court has supplemental jurisdiction under 28 USC § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

## III. Venue

5. Venue is proper in this district under 28 U.S.C. §1391(a)(3) because Defendants are subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

## IV. Conditions Precedent

6. All conditions precedents have been performed or have occurred.

## V. Facts

### A. The Transaction

7. On April 27, 2016, Plaintiff purchased a new 2016 GMC SAVANA CARAVAN bearing VIN 1GTW7AFG7G1215814, hereinafter "SAVANA CARAVAN," from MORGAN

BUICK. The SAVANA CARAVAN was purchased primarily for Plaintiff's personal use.

8. The sales price of the SAVANA CARAVAN was $69,819.00, excluding finance charges. The total cost of the vehicle to Plaintiff including finance charges will be over $100,000.00.

### B. Implied Warranties

9. As a result of the sale of the SAVANA CARAVAN by Defendants to Plaintiff, an implied warranty of merchantability arose in the transaction which included the guarantee that the SAVANA CARAVAN would pass without objection in the trade under the contract description; and that the SAVANA CARAVAN was fit for the ordinary purpose for which such motor vehicles are purchased.

10. Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendants. Specifically, the Defendants impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C. Express Warranties

11. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the SAVANA CARAVAN occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the SAVANA CARAVAN had, in fact, repaired the defects.

12. Plaintiff's purchase of the SAVANA CARAVAN was accompanied by express warranties offered by Defendant, GENERAL MOTORS, and extending to Plaintiff. These warranties were part of the basis of the bargain of Plaintiff's contract for purchase of the SAVANA CARAVAN.

13.   The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the GENERAL MOTORS's warranty booklet and owners manual.

### D.   Actionable Conduct

14.   In fact, when delivered, the SAVANA CARAVAN was defective in materials and workmanship, with such defects being discovered within the warranty periods. Many defective conditions have occurred since purchase, including, but not limited to the following summary by the Plaintiff:

> **"On May 4, 2016, my financing agency, USAA Bank, approved me for a purchase of a vehicle in the amount of up to Seventy Thousand Dollars ($70,000.00) for the purchase of a new vehicle. The total loan amount was Seventy Thousand Two Hundred and Sixty Nine Dollars ($70,269.00).**
>
> **After the approval, 1 began searching for a vehicle and made an inquiry to a person by the name of Ray Lee, Explore Van representative. Mr. Lee sent an email to me thanking me for my inquiry and stated that he was the sales representative for my area here in Alexandria, LA. Mr. Lee gave me his contact information and in addition, he listed the total amount of the vehicle I had inquired about and the specs, plus tax and tag fees.**
>
> **After I reviewed the information, I had further questions and contacted him again by email. His response to me listed the outlet price and other features to the van. I explained to him that I had received the check for the purchase of the van, but Mr. Lee requested that I hold on to the check until further notice. He further stated that I would have to travel to a company known as Morgan Buick GMC located in Shreveport, LA.**
>
> **I was notified by Mr. Pete Greenwood, a dealer for Morgan**

**Buick in Shreveport, that he would inform me when the van was available for pick up.**

**On April 25, 2016, Mr. Greenwood notified me that the van had arrived and that it would be available for pick up on April 28, 2016. He also inquired whether I had a trade in vehicle. I explained to him that I did in fact have a vehicle but had not decided whether I was going to let my daughter take over payments or trade in the vehicle. Mr. Greenwood stated that whatever I decided regarding the old vehicle that they would be willing to work with me regardless. I left to Alexandria, LA on April 28, 2016 to inspect and pick up the vehicle and had decided to consider trading in the old vehicle if a good offer presented itself.**

**When I arrived, I was greeted by Mr. Pete Greenwood and I explained to him that I my financing had already been approved by USAA. He proceeded to asked me if I would like to get a lowered interest rate. I told him if they could and the offer made sense, I would consider it. I waited about 2 hours before Mr. Greenwood came back to me and asked me to meet with the finance officer. They proceeded to tell me that I needed a Ten Thousand Dollar ($10,000.00) down payment due to the value of my old vehicle, a 2013 GMC Conversion Van with mileage of 92,000.**

**Please note, when I arrived back to Alexandria, I had numerous letters of denial where Morgan Buick had inquired for a loan. This was not necessary due to the fact that I had already secured financing for more than enough credit by my own trusted bank This lowered my credit score tremendously.**

**At that time, I explained to them that I would take the old vehicle, a 2013 Conversion Van, and sell it myself especially due to the fact that I had already been approved by USAA for an amount that would more than cover the cost of the new vehicle.**

**The Finance Officer stated that USAA would not let me keep both vehicles, but apparently did not believe me so took it upon herself to call USAA who proceeded to verify that it was up to me what I wanted to do with the 2013 GMC Conversion Van.**

**After that discussion, Morgan Buick proceeded to tell me that I**

**needed Two Thousand dollars ($2,000.00) for a down payment on the new vehicle to complete the purchase.**

**We proceeded to go inspect the vehicle and I found paint deficiencies. They told me that I could bring the vehicle back in a week and that they would repair the deficiencies and I would receive a vehicle to use while it was being repaired.**

**After much discussion, I decided to complete the paperwork with the condition of the Two Thousand Dollars ($2,000.00) and the purchase price of the vehicle of Sixty Seven Thousand Two Hundred Dollars ($67,200.00) and the conditions of the stated repairs.**

**In addition, when I go back to Alexandria, I found more deficiencies and contacted Morgan Buick immediately. The issues were the headliner was coming down and that the sound system was defective as was the Polyurethane that was used to seal the windows were all along the vehicle which could clearly cause more extensive damage.**

**They agreed to make the repairs while supplying me with a vehicle to use while the repairs were taking place, so I agreed to take the vehicle back to Shreveport on 05/15/2016, which they provided me with a loaner car.**

**When they notified me to pick up the van on 06/28/2016, it was still not repaired. I waited three hours when they finally came and told me to bring it back again on 07/15/2016.**

**They also stated that they would have to order other parts and that I would have to wait for them to secure a vehicle for me to drive. In the meantime, I contacted GMC Headquarters in Michigan to complain.**

**After three days from sending the complaint to headquarters, Morgan Buick told me to bring the vehicle back on 08/15/2016 because they had a loaner vehicle for me to drive.**

**On 08/18/2016, I was contacted by Morgan Buick that I need to bring their loner vehicle back and that the van was driveable. I explained to them that I had to pay for a vehicle and incur hardship charges due to this situation. They simply explained**

> **that they needed the vehicle they loaned to me back and I could pick up mind because it was driveable.**
>
> **Even though I was in Houston at the time with my daughter who was having major surgery and I myself am a 100% disabled vet, I returned it on the morning of 08/20/2016.**
>
> **This dilemma has caused numerous hardships such as my daughter having to be transported in an unsuitable vehicle after major surgery, vacation cancellation plans with my grand children and much more.**
>
> **In addition, on 12/05/2016 Morgan Buick called and asked me to return the vehicle so that they could repair the Headliner. As of the date of this letter, it is still in the shop for repair. The vehicle has been in the shop every month since I purchased except June."**

15. Since purchase, Plaintiff have returned his SAVANA CARAVAN to Defendants and authorized warranty service dealers for repairs on numerous occasions. Despite this prolonged period during which Defendants were given the opportunity to repair the SAVANA CARAVAN, the more significant and dangerous conditions were not repaired. Defendants failed to repair the vehicle so as to bring it into conformity with the warranties set forth herein. From the date of its purchase, the SAVANA CARAVAN continues to this day to exhibit some or all of the non-conformities described herein.

16. The defects experienced by Plaintiff with the SAVANA CARAVAN substantially impaired its use, value and safety.

17. Plaintiff directly notified all Defendants and each of him of the defective conditions of the SAVANA CARAVAN on numerous occasions. Plaintiff notified Defendants that they wanted a rescission of the sale of the SAVANA CARAVAN but Defendants have failed and refused to buy back Plaintiff' defective SAVANA CARAVAN.

-7-

**COUNT 1: VIOLATIONS OF THE LOUISIANA REDHIBITION LAWS**

18. Plaintiff re-alleges and incorporates by reference herein each and every allegation set forth in the preceding paragraphs.

19. The SAVANA CARAVAN is a "thing" under La. Civil Code Articles 2520, et seq.

20. GENERAL MOTORS is a "manufacturer" under La. Civil Code Articles 2520, et seq.

21. MORGAN BUICK is a "seller" under La. Civil Code Articles 2520, et seq.

22. Plaintiff is a "buyer" under in La. Civil Code Articles 2520, et seq.

23. The defects described in the SAVANA CARAVAN vehicle meet the definition of a redhibitory defect as defined in La. Civil Code Articles 2520, et seq.

24. Plaintiff has provided the Defendants sufficient opportunity to repair his defective vehicle.

25. Plaintiff has performed each and every duty required of him under Louisiana Redhibition Laws, except as may have been excused or prevented by the conduct of the Defendants, as herein alleged.

26. The hidden defects in the SAVANA CARAVAN existed at the time of sale, but were not discovered until after delivery. The SAVANA CARAVAN is not usable and neither Plaintiff nor a reasonable prudent buyer would have purchased the SAVANA CARAVAN had they known of the defects prior to the sale.

27. Furthermore, Defendants failed to perform the repair work in a good and workmanlike manner. This conduct by Defendants constitute a breach of the implied warranties under Louisiana law, and entitles Plaintiff to a rescission of the sale, return of the purchase price,

plus all collateral costs of the sale, finance charges, insurance premiums, and out of pocket expenses.

28. Under Louisiana Redhibition laws, Plaintiff is entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiff prevails. As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton. Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 2: VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

29. Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

30. Plaintiff is a "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

31. Defendants, GENERAL MOTORS, is a "supplier" and "warrantor" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

32. The SAVANA CARAVAN is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiff in fact purchased it wholly or primarily for personal use.

33. The express warranties pertaining to the SAVANA CARAVAN are a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

34. The actions of Defendants in failing to tender the SAVANA CARAVAN to Plaintiff free of defects and refusing to repair or replace the defective SAVANA CARAVAN constitutes a breach of the written and implied warranties and hence a violation of the Magnuson-Moss Warranty

Act.

35. Plaintiff has performed all things agreed to and required of his under the sales contract and warranty terms, except as may have been eexcused or prevented by the conduct of Defendants as herein alleged.

36. As a direct and proximate result of the acts and omissions of Defendants and each of him as set forth hereinabove, Plaintiff has been damaged in an amount in excess of $100,000.00 according to proof at trial.

37. Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiff is entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiff prevails. As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton. Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

## COUNT 3: NEGLIGENT REPAIR

38. Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs. For purposes of this cause of action, the word "Defendants" refers to GENERAL MOTORS and MORGAN BUICK.

39. On numerous occasions after the sale, Plaintiff delivered the SAVANA CARAVAN to Defendants for repairs of the defective conditions covered under the express and implied warranties set forth hereinabove.

40. On each such occasion, Plaintiff is informed and believe, and thereupon allege, that Defendants attempted the repairs of the SAVANA CARAVAN pursuant to his obligations under

the express and implied warranties. Defendants owed a duty of care to Plaintiff to perform those repairs on the SAVANA CARAVAN in a good and workmanlike manner within a reasonable time. The Defendants breached this duty to Plaintiff.

41.     Defendants' attempted repairs of Plaintiff's SAVANA CARAVAN were done so negligently, carelessly, and recklessly as to substantially impair the SAVANA CARAVAN 's use, value, and safety in its operation and use. At no time was any repair attempt on Plaintiff's SAVANA CARAVAN fully and completely repaired by the Defendants, nor were many of the defective conditions fixed or significantly improved by the Defendants' repair attempts. Nonetheless, each time Plaintiff picked up the vehicle after the Defendants' repair attempts, Defendants represented to Plaintiff that the repairs were complete, and Plaintiff relied upon these statements by the Defendants.

42.     As a direct and proximate result of Defendant's negligent failure to repair the SAVANA CARAVAN within a reasonable time or within a reasonable number of attempts, Plaintiff were unable to use his SAVANA CARAVAN for weeks at a time. As a further direct and proximate result of Defendants' failure to repair the SAVANA CARAVAN in a timely and workmanlike fashion, Plaintiff were forced repeatedly to take the SAVANA CARAVAN in for further repair attempts and to leave the SAVANA CARAVAN for periods of time at great inconvenience to Plaintiff.

43.     The damages Plaintiff has suffered as a direct and proximate result of Defendants' negligence exceed $100,000.00.

**COUNT 4:     BREACH OF EXPRESS WARRANTIES**

44.     Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

45. The Defendants' advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiff's or those similarly situated were free from inherent risk of failure or latent defects. In addition, the Defendants issued an expressed written warranty which covered the and warranted that the was free of defects in materials and work quality at the time of delivery.

46. As alleged above, the Defendants breached its warranties by offering for sale, and selling as safe to Plaintiff, an that was latently defective, unsafe, and likely to cause economic loss to Plaintiff.

47. In breach of the foregoing warranties, the Defendants have failed to correct said defects.

49. The damages Plaintiff has suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 5: BREACH OF IMPLIED WARRANTIES**

50. Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.

51. The Defendants impliedly warranted that Plaintiff', which it designed, manufactured, and sold, were merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

52. Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendants is unreasonable and unconscionable and void under the

principles of estoppel, because Defendants knew the defects existed and might not be discovered, if at all, until the had been driven for a period longer than the period of the written warranty, and Defendants willfully withheld information about the defects from Plaintiff.

53. Because of the defects, Plaintiff's is unsafe and unfit for use and has caused economic loss to the Plaintiff. Therefore, the Defendants breached the implied warranty of merchantability.

54. The damages Plaintiff have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 6:    NEGLIGENCE AND NEGLIGENT MISREPRESENTATION**

55. Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.

56. The Defendants had a duty to Plaintiff to provide a product reasonably safe in design and manufacture, warn of dangerous defects, disclose adverse material facts when making representations of fact to Plaintiff and correct products which are defective.

57. The Defendants breached their duty of reasonably care and duty to disclose material adverse facts to Plaintiff by the following acts and omissions:

    a.   Failure to design and manufacture a that did not harbor the defects alleged herein;

    b.   Failure to notify Plaintiff of the dangerous and defective condition of the when Defendants knew or should have known of the dangerous and defective condition;

    c.   Failure to fulfill its duty to disclose the material adverse facts as set forth above and otherwise failing to exercise due care under the circumstances; and

  d.  Failure to repair the  in accordance with the express and implied warranties.

58. The damages Plaintiff have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### COUNT 7: BREACH OF CONTRACT

59. Plaintiff reallege and incorporate herein by reference each and every allegation set forth in the preceding paragraphs.

60. Plaintiff would show that the actions and/or omissions of Defendants described herein above constitute breach of contract, which proximately caused the direct and consequential damages to Plaintiff described herein below, and for which Plaintiff  hereby sues.

61. The damages Plaintiff have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### VI. Damages

62. The conduct described above has been and is a producing and proximate cause of damages to Plaintiff.

63. Plaintiff's damages include rescission of the sale  including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs,

damages, together with applicable penalties and attorney fees allowed by law, and with legal interest upon the entire sums awarded from the date of judicial demand, until paid, and for all costs of these proceedings.

64. The damages Plaintiff has suffered as a direct and proximate result of Defendants' actions exceed $100,000.00.

### VII. Request for Rescission

65. Plaintiff seeks the remedy of rescission of the sales contract.

66. Plaintiff revokes his acceptance of the SAVANA CARAVAN for the reason that its defects substantially impair its use, value, and safety to Plaintiff and the acceptance was based on Plaintiff' reasonable reliance on the false representations and warranties of the Defendants that the defects in the SAVANA CARAVAN would be repaired, and no reasonable prudent buyer would have purchased the SAVANA CARAVAN with knowledge of these defects prior to the sale. Accordingly, Plaintiff seek a cancellation of the sales contract and an order of the court restoring to him the money obtained by Defendants as a result of the false representations and breaches of express and implied warranties as set forth above. Plaintiff also seek cancellation of the debt and offers to return the SAVANA CARAVAN to the Defendants.

### VIII. Attorney Fees and Costs

67. Plaintiff is entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiff prevails. As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton. Plaintiff has incurred and continue to incur legal fees, costs and

expenses in connection therewith.

## IX.   Prayer for Relief

68.  For these reasons, Plaintiff pray for judgment against the Defendants for the following:

    a.    For general, special and actual damages according to proof at trial;

    b    Rescinding the sale of the 2016 GMC SAVANA CARAVAN VIN 1GTW7AFG7G1215814and returning to Plaintiff the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

    c.    For incidental and consequential damages according to proof at trial;

    d.    Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges;

    e.    Any diminution in value of the SAVANA CARAVAN attributable to the defects;

    f.    Past and future economic losses;

    g.    Prejudgment and post-judgment interest;

    h.    Attorney fees;

    I.    Costs of suit, expert fees and litigation expenses; and

    j.    All other relief this Honorable Court deems appropriate.

## X.   Demand for Jury Trial

69.  Plaintiff hereby demands trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*
Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
1343 West Causeway Approach
Mandeville, Louisiana 70471
E-mail: rdalton746@aol.com
Tel. (985) 778-2215
Fax: (985) 778-2233

ATTORNEY FOR PLAINTIFF